

Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
eric@ericslocumsparkspc.com

Eileen W. Hollowell, Bankruptcy Judge

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:

NIMBUS BREWING COMPANY, LLC,

Debtor.

No. 4:12-bk-08122-EWH

Chapter 11

**ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED September 12, 2013 and MODIFICATIONS AND STIPULATIONS THERETO, if any**

The First Amended Plan of Reorganization dated September 12, 2013 under Chapter 11 of the Bankruptcy Code filed by the Debtor, hereinafter referred to as "The Plan" (Exhibit A Attached hereto and incorporated herein), and a copy of said Plan and the Disclosure Statement approved by the Court having been transmitted to the holders of claims and interests; and the interest holder of the Debtor filed a Declaration attesting that all confirmation requirements of 11 U.S.C. §1129 of the Code have been complied with; objections having been made and having been resolved per stipulation or agreement; and good cause appearing;

It having been determined after notice and a hearing:

(1)     That the Plan complies with the applicable provisions of Chapter 11 of the Bankruptcy Code (the "Code");

(2)     That the proponent of the Plan complies with the applicable provisions of the Code;

(3)     That the Plan has been proposed in good faith and not by any means forbidden by law;

1

(4)  A.   That any payment or promise by the Debtor for services of, for or by any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the Plan and incident to the case, have been disclosed to the Court; and

B.   Any such payment made before confirmation is reasonable; or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Court as reasonable;

(5)  The Debtor will continue to manage the affairs of the estate;

(6)  Any regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(7)  With respect to each class:

A.   Each holder of a claim or interest of such class has accepted the Plan; or will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7; or

B.   If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim of such class who has made the 1111(b)(2) election, will receive or retain under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims;

C.   **Debtor reserves the right to object to claims not stipulated herein at a later date.**

(8)  Class One is administrative claims, is not impaired and not eligible to vote.  All Administrative fees will be paid in cash upon the plan Effective Date.

(9)  Class Two is the priority claims of governmental units.  Class Two is impaired and did

2

not cast a vote. In lieu of the treatment of its claims as set forth in the Plan, Arizona Department of Revenue ("ADOR") will receive treatment of its claims as set forth in Paragraphs 19(i) and 24.C.(i) hereof. ADOR shall retain any and all liens, if any, against Debtor or its property to the same extent and priority as existed prior to Debtor's filing its petition in bankrupty without the necessity of ADOR's taking any action.

Debtor's failure to comply with the Plan provisions, as contained in the Plan, a confirmation order approving the Plan or Arizona statutes, concerning liability owed to ADOR shall constitute a default of the Plan. Default includes but is not limited to Debtor's failure to timely make full payments pursuant to the Plan, file any tax return or pay any tax liability. If Debtor fails to file any outstanding returns or cure any monetary default with certified funds within ten (10) calendar days after written notice of the default from ADOR or its agents to Debtor or its attorney of record, the entire balance due ADOR shall be immediately due and owing. Further in the event of a default, ADOR may enforce its claim in the entire amount of Debtor's liability without seeking a modification of any stay imposed by the Bankruptcy Code, exercise any and all rights and remedies under applicable non-bankruptcy law, including but not limited to state tax collection procedures, and obtain any other relief deemed appropriate by a court of competent jurisdiction. Debtor agrees to extend any statutory period that limits assessment or collection of the debt to be paid pursuant to the Plan for a period equal to the longer of the time provided statutorily or for three (3) years form the date on which the last Plan payments is due to ADOR.

(10)     Class Three is the secured claim of Ad Valorem Real Property Taxes. Class Three is impaired and did not cast a vote and will receive the treatment set forth in the Plan.

(11)     Class Four is the secured statutory claims of Pima County. Class Four is impaired, voted to accept the Plan and will receive the treatment set forth in the Plan.

(12)     Class Five is the secured claim of Rewards Network Establishment. Class Five is impaired, voted to reject the Plan. Class Five subsequently withdrew its rejection ballot

3

and the Plan is hereby amended to provide the following treatment to Rewards Network.

3.5 Class 5 -Secured Claim of Rewards Network Establishment Services, Inc. ("Rewards Network") .

A. Classification: This claim consist of the secured claim of Rewards evidenced by various purchase agreements executed by Debtor and delivered to Reward Network, including, but not limited to: (i) the Dining Credits Program Agreement dated November 5, 2009, the Dining Credits Program dated July 22, 2010 and the Amendment to Dining Credits Program Dated June 16, 2011 ( the "**DCPA**"); (ii) the Security Agreement dated November 5, 2009 (the "**Security Agreement**"); (iii) the UCC Financing Statements filed by Rewards Network on December 1, 2009 with the Arizona Secretary of State as Instrument Nos. 200915998539 and 200915998540 (the "**UCC Financing Statements**"); and (iv) any and all amendments or modification to any of the foregoing, as well as other documents evidencing, securing, or relating to the DCPA. The DCPA, Security Agreement, UCC Financing Statements, and any and all amendments or modification to any of the foregoing, as well as other documents evidencing, securing, or relating to the DCPA may be referred to collectively as the "RN Documents."

B. Impairment: Class Five is impaired.

C. Treatment: The Class Five allowed secured claim of Reward shall be paid as follows: pursuant to the Amended Plan, the Debtor shall assume, under 11 U.S.C. § 365, the RN Documents as of the Effective Date and the Debtor and Rewards shall perform their respective obligations thereunder based on the outstanding dining credits under the RN Documents and any other obligations owing thereunder. On the Effective Date, the Debtor shall cure any and all defaults under the RN Documents, including without limitation paying Rewards $10,500.00 in readily available funds for Rewards' attorney fees and costs incurred in connection with the RN Documents. All obligations owing from the Debtor under the RN Documents shall continue to be secured by Rewards' valid and perfected first priority blanket lien and security interest in all of the Debtor's

4

Personal property, tangibles and intangibles ( the "Reward Collateral"), as evidenced by, among other things, the Security Agreement and the UCC Financing Statements, Notwithstanding any other provision in this Amended Plan to the contrary, upon an event of default by the Debtor under the RN Documents, Rewards network shall be entitled to immediately exercise all rights and remedies stated in the RN Documents against the Debtor, the Rewards Collateral, or otherwise, in state court or any other forum allowed for under the RN Documents.

(13)    Class Six is the secured claim of BMT Leasing, Inc.. Class Six is impaired, did not cast a vote, and will receive the treatment set forth in the Plan.

(14)    Class Seven is the secured claim of Nationwide Funding LLC. Class Seven is impaired, did not cast a vote and will received the treatment set forth in the Plan.

(15)    Class Eight is the secured claim of US Bancorp. Class Eight is impaired, did not cast a vote and will receive the treatment set forth in the Plan.

(16)    Class Nine is the secured claim of AEL Financial, LLC. Class Nine is impaired, did not cast a vote and will receive the treatment set forth in the Plan.

(17)    Class Ten is the secured claim of Corp Service Company. Class Ten is impaired, did not cast a vote and will receive the treatment set forth in the Plan.

(18)    Class Eleven is the secured claim of National City Commercial Capital. Class Eleven is impaired, did not cast a vote and will receive the treatment set forth in the Plan.

(19)    Class Twelve is unsecured deficiency claims and unsecured claims. Class Twelve is impaired, cast votes as follows: Advision Outdoor with a claim in the amount of $17,395.00 voted to accept the Plan, Southwest Gas Corp with a claim in the amount of $2,295.53 voted to accept the Plan, Login, Inc with a claim in the amount of $16,065.00 has changed its vote to accept the Plan. Class Twelve will receive the treatment set forth in the Plan.

(i) ADOR has an allowed claim in Class 12 in the amount of $7,353.61, which shall be treated *pari passu* with other claims in Class 12, i.e., half of the allowed amount of the

5

| | | |
|---|---|---|
| 1 | | claim ($3,676.80) shall be paid in 120 equal monthly installments of $35.50 each, |
| 2 | | including interest at the rate of 3% per annum, due on the first business day of each |
| 3 | | month commencing February 3, 2014. |
| 4 | (20) | Class Thirteen is the contingent, unliquidated and disputed claims. Class Thirteen is |
| 5 | | impaired, did not cast a vote, and will receive the treatment set forth in the Plan. |
| 6 | (21) | Class Fourteen is the claims of Participating Investors. Class Fourteen is impaired, did |
| 7 | | not cast a vote and will receive the treatment set forth in the Plan. |
| 8 | (22) | Class Fifteen is the claims of Equity Holders. Class Fifteen is not impaired and not |
| 9 | | eligible to cast a vote. |
| 10 | (23) | Claim of Keg Credit: On Effective Date which will occur before January 30, 2014 debtor |
| 11 | | will bring delinquency with Keg Credit current by making a cash payment of $18,858.80. |
| 12 | | Thereafter debtor will make payments of $4,025.06 from February 2014 to July 2014, |
| 13 | | and $2,362.40 thereafter under its agreement. |
| 14 | (24) | Except to the extent that the holder of a particular claim has agreed to a different |
| 15 | | treatment of such claim, the Plan provides that: |
| 16 | A. | With respect to a claim of a kind specified in Sections 507(a)(1) or 507(a)(2) of |
| 17 | | the Code, on the effective date of the Plan, the holder of such claim will receive |
| 18 | | on account of such claim cash equal to the allowed amount of such claim; |
| 19 | B. | With respect to a class of a kind specified in Sections 507(a)(3), 507(a)(4), |
| 20 | | 507(a)(5) or 507(a)(6) of the Code, each holder of a claim of such class will |
| 21 | | receive, if such class has accepted the Plan, deferred cash payments of a value, |
| 22 | | as of the effective date of the Plan, equal to the allowed amount of such claim; |
| 23 | | or, if such class has not accepted the Plan, cash on the effective date of the Plan |
| 24 | | equal to the allowed amount of such claim; and |
| 25 | C. | With respect to a claim of a kind specified in Section 507(a)(8) of the Code, the |
| 26 | | holder of such claim will receive on account of such claim value, as of the |
| 27 | | effective date of the Plan, equal to the allowed amount of such claim; |
| 28 | | 6 |

(i) ADOR has an allowed priority claim in the amount of $29,762.59, which shall be paid in thirty-nine (39) equal installments of $801.90 each, including interest at the rate of 3% per annum, due on the first business day of each month commencing February 3, 2014.

(25)   At least two classes of claims have now accepted the Plan, determined without including any acceptance of the Plan by an insider holding a claim of such class;

(26)   Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

(27)   The property of this estate is re-vested in the reorganized Debtor after confirmation.

(28)   The debtor reserves/retains its rights for a cause of action against New Way Tucson Restaurant, L.L.C. and DonBrandon, L.L.C.

(29)   All liens or encumbrances on the Debtor's assets except as permitted by prior agreements and stipulations approved by this Court or incorporated into this order and Plan, are invalid and removed.

NOW THEREFORE, it is accordingly ORDERED that the Debtor's First Amended Plan of Reorganization dated September 31, 2013 (copy attached as **EXHIBIT A**) shall be, and hereby is, confirmed in its entirety (except as modified herein, and to the extent there are any inconsistencies between the terms of the Plan and this Order, this Order will control), and the Debtor shall proceed to effectuate the Plan in accordance with the terms of this Order; and it is further

ORDERED that the Debtor is hereby authorized and empowered to execute such documents as may be necessary and required to effectuate consummation of this Plan; and it is further

ORDERED that all classes of creditors, and/or their respective agents, assigns or successors-in-interest, are hereby authorized and directed to execute and deliver to the Debtor any and all

7

| | |
|---|---|
| 1 | documentation as may be required by Debtor to effectuate consummation and implementation of the |
| 2 | terms of the Plan. |
| 3 | |
| 4 | |
| 5 | DATED, SIGNED AND ORDERED ABOVE |
| 6 | |
| | APPROVED AS TO FORM AND CONTENT: |
| 7 | |
| 8 | /s/ Isaac M. Gabriel (by permission) |
| | Isaac M. Gabriel, Esq. |
| 9 | Attorney for Rewards Network |
| 10 | with respect to Paragraphs 9, 19(i) and 24(C)(i) |
| 11 | /s/ Barbara Klabacha (by permission) |
| | Barbara Klabacha |
| 12 | Arizona Department of Revenue |
| 13 | |
| | /s/ Dennis M Breen (by permission) |
| 14 | Dennis M. Breen, III, Esq. |
| | Attorney for Keg Credit. L.L.C. |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | 8 |

1
2
3
4
5 EXHIBIT A
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
eric@ericslocumsparkspc.com

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:                                          )
                                                )
NIMBUS BREWING COMPANY, LLC,                     )      No. 4:12-bk-08122-EWH
                                                )
                                                )      Chapter 11
                                                )
                                                )      DEBTOR'S FIRST AMENDED PLAN OF
                                                )      REORGANIZATION DATED
                                                )      September 12, 2013
_____ )

     Nimbus Brewing Company, LLC, (hereinafter "Debtor"), Debtor-in-possession in the above-captioned Chapter 11 case, hereby proposes the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code. All creditors and other parties in interest are encouraged to consult the Disclosure Statement prepared by the Debtor, as approved by the Bankruptcy Court, before voting to accept or reject this Plan of Reorganization. The Disclosure Statement contains a discussion of the Debtor, its business operations and the disclosure of all other information material to the approval of this Plan of Reorganization. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith as approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan of Reorganization.

1

***ARTICLE I***

*Definitions*

For purposes of this Plan, except as expressly provided otherwise or unless the context otherwise required, all of the following defined terms will have the following meanings. The terms defined below will be equally applicable to both singular and plural forms, and to the masculine, feminine, and neuter forms, of such defined terms.

1.1    "Administrative Claim" will refer to and mean every cost or expense of administration of the reorganization case allowed under Bankruptcy Code §503(b) and referred to in Bankruptcy Code §507(a)(1), including without limitation: (a) any actual and necessary expense of preserving the estate as approved the Bankruptcy Court; (b) all allowances, including professional fees and costs approved by the Bankruptcy Court; (c) any actual and necessary expenses incurred in the operation of the Debtor's business; and (d) all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United Stated Code.

1.2    "Allowed Claim" shall mean (a) a claim off a person which has been scheduled by the Debtor as undisputed, and as to which claim no objection has been made by any other person within the time allowed for the making of objections; (b) a claim allowed by a final order; (c) a claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment, no objection has been made within the time allowed for the making of objections; or (d) a claim allowed under the Plan, notwithstanding any objection filed thereto by an person. Interest accrued after the filing date of the Debtor's reorganization case shall not be a part of any allowed claim against such Debtor, except as required or permitted by law.

1.3    "Affiliate" shall mean any affiliate that is defined in Section 101(2) of the Bankruptcy Code.

1.4    "Allowed Amount" shall mean with respect to any allowed claim in a particular class under the Plan, the amount of such claims in such class.

1.5    "Allowed Interest" or "Allowed Equity Interest" shall mean (a) an equity interest in the

2

1    Debtor held by a person as of the Effective Date, and as to which interest no objection has been made

2    by any other person within the time allowed for the making of objections; (b) an interest allowed by a

3    final order; (c) an interest as to which a timely and proper proof of claim or application for payment no

4    objection has been made within the time allowed for the making of objections or (d) an interest allowed

5    under the Plan, notwithstanding any objection filed thereto by any person.

6        1.6    "Assets" shall mean, with respect to the Debtor, all rights, causes of action, all of the

7    right, title and interest in and to property (real or personal, tangible or intangible) or whatsoever type or

8    nature, owned by such Debtor as of the Effective Date, together with assets subsequently acquired by

9    such Debtor, and including, but not limited to, property as defined in Section 541 of the Bankruptcy

10    Code (each identified item of property being herein sometimes referred to as an asset).

11        1.7    "Ballot" will refer to and mean the ballot for accepting or rejecting the Plan which will

12    be distributed to holders of claims and classes that are impaired under this Plan are entitled to vote on

13    this Plan.

14        1.8    "Bankruptcy Code" will refer to and mean Title 11 of the United States Code 11 U.S.C.

15    §101, et seq., as the same may be amended from time to time.

16        1.9    "Bankruptcy Court or Court" will refer to and mean the United States Bankruptcy Court

17    for the District of Arizona, or such other court that exercises jurisdiction over all or part of the

18    reorganization case, including the United States District Court for the District of Arizona, to the extent

19    the reference of all or part of this reorganization case is withdrawn.

20        1.10    "Bankruptcy Rules" will refer to and mean the Federal Rules of Bankruptcy Procedure,

21    as amended, promulgated under 28 U.S.C. §2075 and the local rules of the Court, as applicable from

22    time to time during the reorganization case.

23        1.11    "Business Day" will refer to and mean any day other than a Saturday, Sunday, or federal

24    holiday recognized by the Federal Courts for the District of Arizona, and Arizona State holidays

25    recognized by the Federal Courts for the District of Arizona.

26        1.12    "Case" shall mean the Chapter 11 case commenced by the filing with the Court of a

27    voluntary petition for relief under Chapter 11 of the Code by the Debtor.

28                 3

Case 4:12-bk-08122-EWH   Doc 116   Filed 09/12/13   Entered 09/12/13 16:25:25   Desc
Main Document   Page 3 of 20
Case 4:12-bk-08122-SHG   Doc 152   Filed 01/24/14   Entered 01/27/14 08:57:57   Desc
Main Document   Page 12 of 29

1.13    "Cash" will refer to and mean cash, cash equivalents, bank deposits, and negotiable instruments.

1.14    "Chapter 11" shall mean Chapter 11 of the Code, 11 U.S.C. Section 1101-46.

1.15    "Claim" will refer to and mean every right and remedy encompassed within the statutory definition set forth in Bankruptcy Code §101(4), 11 U.S.C. §101(4), whether or not such claim is asserted.

1.16    "Class" will refer to and mean each of the categories of claims and interests described in Article II of this Plan.

1.17    "Confirmation Date" will refer to and mean the date on which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.18    "Confirmation Hearing" will refer to and mean the hearing regarding the confirmation of this Plan conducted pursuant to Bankruptcy Code §1128, as adjourned or continued to from time to time.

1.19    "Confirmation Order" will refer to and mean the order confirming this Plan pursuant to Bankruptcy Code §1129.

1.20    "Court" shall mean the United States Bankruptcy Court for the District of Arizona, Tucson Division.

1.21    "Creditor" will refer to and mean every holder of a claim whether or not such claim is an allowed claim, encompassed within the statutory definition set forth in Bankruptcy Code §101(9), 11 U.S.C. §101(9).

1.22    "Debtor" will refer to and mean Nimbus Brewing Company, LLC., in the capacities as the Debtor and Debtor-In-Possession in the reorganization case with the status and rights conferred by U.S.C. Section 1107.

1.23    "Deficiency Claim" shall mean an allowed claim of a creditor, if any, equal to the amount by which the aggregate allowed claims of such creditor exceed the sum of (a) any setoff rights of the creditor permitted under Section 553 of the Bankruptcy Code rights of the creditor permitted under Section 553 of the Bankruptcy Code plus (b) the secured claim of such creditor; provided however, that

4

if the holder of a secured claim of the class of which such claim is a member makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, there shall be no deficiency claim in respect of such claim.

1.24    "Disclosure Statement" will refer to and mean the written statement describing this Plan which is prepared by the Debtor and distributed in accordance with Bankruptcy Code §§1125, 1126(b), and 1145 and Bankruptcy Rule 3018, as amended, in its present form or as the same may be altered, amended, or modified by the Debtor.

1.25    "Disputed Claim or Disputed Interests" will refer to and mean every claim; (a) that is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been interposed prior to the final date provided under this Plan for the filing of such objections or such other time as provided by the Bankruptcy Court and which objection has not been withdrawn, settled or determined by the final order.

1.26    "Effective Date" shall mean the later of (a) the first business day following the **60th** day after entry of the Court of an order confirming this Plan, or (b) the first business day after such order has become final and unappealable; provided however, no appeal of said order is pending; provided further, the Debtor may waive the condition that no appeal of the order of confirmation be pending by a writing duly executed by the Debtor and filed with the Court on or before the date which but for the pendency of appeal would become the effective date of the Plan, and in the event that said condition is timely waived by the Debtor, the Plan shall become effective as provided herein notwithstanding the pendency on said date of an appeal or appeals; in the event that said condition is not timely waived, the Plan shall become effective on the first business day after an appeal is no longer pending.

1.27    "Estate" will refer to and mean the bankruptcy estate of the Debtor created in the reorganization case under the Bankruptcy Code.

1.29    "Equity Contribution" means that money from an equity holder which needs to be contributed so as to allow them to retain their interest in the Debtor.

1.30    "Final Order" shall mean an order of judgment of the Bankruptcy Court which (a) shall

5

not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed and no further hearing, appeal or petition for certiorari can be taken or granted, or as to which no stay has been entered to affect the operative provisions of such order of judgment.

1.31 "Insider" shall refer to and mean all persons who qualify as an "insider" pursuant to 11 U.S.C. §101(31).

1.32 "Interest" shall mean any equity interest in the Debtor as of the petition date.

1.33 "Interest Holder(s)" shall mean any person or persons owning an equity interest in the Debtor as of the Effective Date.

1.34 "Minimum New Capital Contribution" refers to that sum of money that may be paid in cash into the escrow account prior to confirmation in order to proceed with confirmation of the Plan, if necessary. The amounts necessary to be funded by such Effective Date are detailed in the Disclosure Statement.

1.35 "Participating Investors" shall mean those investors selected by the Debtor to make capital contributions to the Reorganized Debtor in exchange for an interest in the Debtor.

1.36 "Person" will refer to and mean any individual, corporation, limited or general partnership, joint venture, association, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof.

1.37 "Petition Date" shall mean the date that the Debtor filed the voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.

1.38 "Plan" shall mean this Plan of Reorganization as set forth herein, in its entirety, and all addenda, exhibits, schedules, releases, and other attachments thereto as may be amended or supplemented from time to time.

1.39 "Preference Recovery Amounts" shall mean all sums collected as preferences under §547 of the Code and as set-offs under §553 of the Code.

1.40 "Professional Persons" means persons retained or to be compensated pursuant to §§327,

6

328, 330 and 503(b) of the Code.

1.41  "The Property" means the personal property of the debtor.

1.42  "Proponent" shall mean the Debtor.

1.43  "Secured Claim" shall mean (a) a claim secured by a lien on property of the Debtor, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in such Debtor's reorganization case, but only to the extent that such claim does not exceed the value of such Debtor's assets which the Bankruptcy Court finds are valid security for such claim (except, if the class of which such claim is a part makes the election provided in Section 1111(b)(2) of the Bankruptcy Code, the entire amount of the claim shall be a secured claim and (b) a claim allowed under the Plan as a secured claim.

1.44  "Secured Creditors" means persons holding allowed secured claims within the meaning of Section 506 of the Code.

1.45  "Tax Claims" shall mean the claims of any person for the payment of taxes (a) accorded a priority pursuant to Section 507(a)(1) and (7) of the Bankruptcy Code, but excluding all claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties shall be deemed disallowed and discharged on the Effective Date.

1.46  "Taxing Authorities" shall mean any legal entity with authority to levy and collect taxes pursuant to federal, state or local statutes or ordinances.

1.47  "Unsecured Claims" shall mean all claims held by creditors of the Debtor, including deficiency claims, dissolution claims and claims arising out of the rejection of executory contracts, other than secured claims, administrative claims and tax claims.

1.48  "Unsecured Creditors" shall mean persons holding allowed unsecured claims against the Debtor for which there are no assets of the Debtor serving as security (excluding undersecured mortgage deficiency creditors), but not including priority claims.

All terms not specifically defined by this Plan shall have the meaning designated in the Bankruptcy Code, or if not defined therein, their ordinary meanings.

7

## ARTICLE II

### General Terms and Conditions

2.1 <u>Class of Claims and Payment</u>: Various classes of claims and interests are defined in this Plan. This Plan is intended to deal with all claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(h) of the Code. However, only those claims allowed pursuant to Section 502(a) of the Code will receive payment under this Plan.

2.2 <u>Preserved Liens</u>: To the extent required under Section 1124(2) of the Code, to preserve the rights of a creditor having a secured claim addressed pursuant to that Section, the lien or encumbrance of that creditor shall, to the extent valid, be preserved.

2.3 <u>Time for Filing of Claims</u>: The list of creditors filed in these proceedings by the Debtor shall constitute the filing of a claim by each creditor which is not listed as disputed, contingent or unliquidated as to amount. The Debtor reserves the right to object to any such claim where it appears that the amount scheduled by the Debtor is improper or where there is some dispute with regard to that claim. All other creditors, or creditors who disagree with the amounts as scheduled by the Debtor must file prior to the date set for the hearing on the Disclosure Statement, a proof of claim or proof of interest. Failure to timely file a proof of claim or file a proof of interest, if not listed on the Debtor's schedules as non-contingent, liquidated and undisputed, will result in a disallowance of the proof of claim or proof of interest.

## ARTICLE III

### Classification and Treatment of Claims and Interests

For purposes of the plan, claims are classified and treated as follows:

1. *Claim Amounts*: Because certain claims against the Debtor may be unknown or of undetermined amounts, the amounts of claims specified in this Disclosure Statement reflect only the Debtor's best estimate at this time of the amount due. In addition, the amounts of the claims specified in this Disclosure Statement do not include, for example, claims arising from the rejection of certain executory contracts and other contingent or unliquidated claims arising against the debtor. Disputed or

8

1   unliquidated claims will be adjusted after confirmation of the plan and prior to closing the case.

2       2.      *Effective Date of the Plan*: The "Effective Date" of the Plan is important in determining

3   when performance of many of the Debtor's obligations under the Plan is due.  The Effective Date is

4   defined in the Plan as the first business day following the later of the following day;

5               (i) the date on which the Order confirming the Plan (the "Confirmation Order") becomes

6   final and non-appealable with no appeal then pending; or

7               (ii) 60 days after the date of the Confirmation Order for unsecured claims; and

8               (iii) 60 days after the date of the Confirmation Order for secured claims, if any.

9       3.      *Funding Plan of Reorganization*.  Debtor shall fund its plan of reorganization from

10  ongoing business operations and possible capital contributions, if required.

11      4.      *Classification*: The Plan divides claims against the Debtor, into multiple separate classes

12  that the Debtor asserts are in accordance with the Bankruptcy Code.  Unless otherwise expressly stated

13  in the Plan, distributions to holders of allowed claims are in full satisfaction of their allowed claims.  All

14  claims against the Debtor arising prior to confirmation will be discharged by performance of the Plan

15  on the Effective Date to the extent that such claims are dischargeable under the Bankruptcy Code Section

16  1141(d).  For the purposed of the Plan, claims are classified and treated as follows:

17      3.1     Class 1 - Administrative Claims.

18          A.      Classification: Class 1 consists of all claims for the cost of administration of the

19  Debtor's bankruptcy estate.  Included in this call are all claims for administrative expenses entitled to

20  priority under Bankruptcy Code §507()(A)(1) Such as professional fees and costs, as approved by the

21  Bankruptcy Court of the attorneys, accountants, and other professional persons employed by the Debtor,

22  and all actual and necessary expenses of operating the Debtor's business pursuant to Bankruptcy Code

23  §503(b), including without limitation, all fees charged against the Debtor's business pursuant to Chapter

24  123 of Title 28, United States Code.  Administrative claims shall include any post petition taxes due any

25  taxing authority on the petition date.  Debtor believes claims in this class may exceed $25,000.00.

26          B.      Impairment: Class 1 is not impaired.

27          C.      Treatment: The Plan provides for the payment in cash, in full, of all allowed

28                                                  9

1  Administrative Claims on the later of the Effective Date or the date upon which such Claims become

2  Allowed Claims, or as otherwise ordered by the Bankruptcy Court. Class 1 claims will be paid from

3  assets of the estate. The Debtor currently estimates that the Class 1 claims will total approximately

4  $25,000.00 and may include post-petition administrative expenses. Such payments will reduce the

5  amount of administrative expenses due on the Effective Date of the Plan unless otherwise provided for.

6      3.2    <u>Class 2 - Claims of Governmental Units</u>

7      A.    <u>Classification</u>: Class Two claims consists of all allowed claims of the United

8  States Internal Revenue Service ("IRS") and/or State of Arizona, Department of Revenue ("DOR")

9  and/or the Department of Economic Security ("DES"), City of Tucson or other government agency

10  which are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code except ad

11  valorem taxes. <u>Debtors are aware of Proofs of Claim filed by Arizona Department of Revenue in the</u>

12  <u>amount of $37,116.20.</u>

13      B.    <u>Impairment</u>: Class Two is impaired.

14      C.    <u>Treatment</u>: Each holder of a Class Two allowed claim shall retain its lien or claim,

15  in accordance with Section 1129 of the Bankruptcy Code. The claim shall bear simple interest at a fixed

16  rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621

17  and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines

18  is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount

19  of such claim. The allowed claim shall be payable in 60 equal monthly installments of principal, along

20  with accrued interest, in deferred cash payments over a period not to exceed five years from date of

21  petition. The first payment shall commence on the first day of the month immediately following the

22  month of the Effective Date. The claim is subject to prepayment at any time without penalty or premium

23  and shall have such other terms as are usual and customary.

24      3.3    <u>Class 3 - Secured Ad Valorem Real Property Tax Claims</u>

25      A.    <u>Classification</u>: Class Three shall consist of pre-petition allowed Ad Valorem Real

26  Property Tax Claims of Pima County, AZ which are secured by liens on real property. <u>The Debtor is</u>

27  <u>unaware of any claims in this class.</u>

28      10

1           B.     Impairment: Class Three is impaired.

2           C.     Treatment: Each holder of a Class Three allowed claim shall retain its lien having

3 an aggregate principal amount sufficient to satisfy, in accordance with Section 1129 of the Bankruptcy

4 Code, the allowed claim. Such claim shall bear simple interest at a statutory rate

5 required to be paid as of the Effective Date, or such other interest rate as the Bankruptcy Court

6 determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the

7 principal amount of such claim charged by Pima County or the statutory rate of interest. Payments

8 shall be made in equal monthly installments of principal, along with accrued interest, in deferred

9 cash payments over a period not to exceed five years from date of petition. The claim is subject to

10 prepayment at any time without penalty or premium and shall have such other terms as are usual and

11 customary for promissory notes.

12     3.4     Class 4 - Secured Statutory Claims of Pima County

13           A.     Classification: Class Four shall consist of pre-petition allowed Secured Tax

14 Claims of Pima County for personal property taxes. The Debtors estimate claims in this class in the

15 approximate amount of $8,427.60 for tax years 2011 and 2012.

16           B.     Impairment: Class Four is impaired.

17           C.     Treatment: The holder of a Class Four allowed claim shall retain its lien having

18 an aggregate principal amount sufficient to satisfy, in accordance with Section 1129 of the Bankruptcy

19 Code, the allowed claim. Such claim shall bear simple interest at a statutory rate of 16% per annum

20 required to be paid as of the Effective Date, or such other interest rate as the Bankruptcy Court

21 determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the

22 principal amount of such claim charged by Pima County or the statutory rate of interest. Payments shall

23 be made in equal monthly installments of principal, along with accrued interest, in deferred cash

24 payments over a period not to exceed five years from date of petition, with the first payment

25 commencing on the first day of the month immediately following the month of the Effective Date. The

26 claim is subject to prepayment at any time without penalty or premium and shall have such other terms

27 as are required by law.

28                     11

Case 4:12-bk-08122-EWH   Doc 116   Filed 09/12/13   Entered 09/12/13 16:25:25   Desc
Main Document   Page 11 of 20
Case 4:12-bk-08122-SHG   Doc 152   Filed 01/24/14   Entered 01/27/14 08:57:57   Desc
Main Document   Page 20 of 29

3.5      Class 5 - Secured Claim of Rewards Network Establishment ("Rewards").

_____A.      Classification: This claim consists of the allowed secured claim of Rewards to the extent of the value of the secured creditor's interest in the Debtor's interest in all inventory, accounts, chattel paper, equipment and general intangibles, all accessions, additions, replacements, and substitutions relating to any of the foregoing, all records of any kind relating to any of the foregoing and all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds). This claim is evidenced by a promissory note and security agreement. The Debtor is aware of a proof of claim in this class in the amount of $49,405.74.

B.      Impairment: Class Five is impaired.

C.      Treatment: The Class Five allowed secured claim of Rewards shall continue to be paid according to the contract entered into by the parties.

3.6      Class 6 - Secured Claim of BMT Leasing Inc. ("BMT")

A.      Classification: This claim consists of the allowed secured claim of BMT to the extent of the value of the secured creditor's interest in the Debtor's interest in the equipment finance agreement. This claim is evidenced by an equipment finance agreement and UCC-1 filings. The Debtor is aware of a proof of claim in this class in the amount of $2,400.22.

B.      Impairment: Class Six is impaired.

C.      Treatment: The Class Six allowed secured claim of BMT shall be paid in equal monthly installments over sixty months at five (5%) percent interest per annum.

3.7      Class 7 - Secured Claim of Nationwide Funding, LLC (" Nationwide").

A.      Classification: This claim consists of the allowed secured claim of Nationwide to the extent of the value of the secured creditor's interest in the Debtor's interest in leased equipment under lease agreements 10-009724. This claim is evidenced by a lease agreement . Debtor estimates the claim in this class in the amount of $16,944.64. Debtor believes the claim is not fully secured.

B.      Impairment: Class Seven is impaired.

C.      Treatment: The Class Seven allowed secured claim of Nationwide shall be $$9,694.64 paid in equal monthly installments over sixty months at five (5%) percent interest per annum

12

Case 4:12-bk-08122-EWH    Doc 116    Filed 09/12/13    Entered 09/12/13 16:25:25    Desc
Main Document    Page 12 of 20
Case 4:12-bk-08122-SHG    Doc 152    Filed 01/24/14    Entered 01/27/14 08:57:57    Desc
Main Document    Page 21 of 29

1     as a total payoff on the lease.

2         3.8     Class 8 - Secured Claim of US Bancorp (" US Bancorp").

3               A.     Classification: This claim consists of the allowed secured claim of US Bancorp

4     to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under

5     UCC-1 filings. This claim is evidenced by UCC-1 filings. Debtor estimates the claim in this class in the

6     amount of unknown.

7               B.     Impairment: Class Eight is impaired.

8               C.     Treatment: Debtor believes that the claim of US Bancorp has been satisfied and

9     no monies are owed to Us Bancorp. If US Bancorp is found to have a claim it shall be treated and paid

10     according to the contract entered into by the parties.

11         3.9     Class 9 - Secured Claim of AEL Financial LLC (" AEL").

12               A.     Classification: This claim consists of the allowed secured claim of AEL to the

13     extent of the value of the secured creditor's interest in the Debtor's interest in equipment under UCC-1

14     filings. This claim is evidenced by UCC-1 filings. Debtor estimates the claim in this class in the amount

15     of unknown.

16               B.     Impairment: Class Nine is impaired.

17               C.     Treatment: Debtor believes that the claim of AEL has been satisfied and no

18     monies are owed to AEL. If AEL is found to have a claim it shall be treated and paid according to the

19     contract entered into by the parties.

20         3.10     Class 10 - Secured Claim of Corp Service Company (" Corp Service").

21               A.     Classification: This claim consists of the allowed secured claim of Corp Service

22     to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under

23     UCC-1 filings. This claim is evidenced by UCC-1 filings. Debtor estimates the claim in this class in the

24     amount of unknown.

25               B.     Impairment: Class Ten is impaired.

26               C.     Treatment: Debtor believes that the claim of Corp Service has been satisfied and

27     no monies are owed to Corp Service. If Corp Service is found to have a claim it shall be treated and paid

28                                          13

Case 4:12-bk-08122-EWH    Doc 116    Filed 09/12/13    Entered 09/12/13 16:25:25    Desc
Main Document    Page 13 of 20
Case 4:12-bk-08122-SHG    Doc 152    Filed 01/24/14    Entered 01/27/14 08:57:57    Desc
Main Document    Page 22 of 29

according to the contract entered into by the parties.

    3.11   <u>Class 11 - Secured Claim of National City Commercial Cap (" National City").</u>

        A.   <u>Classification</u>: This claim consists of the allowed secured claim of National City to the extent of the value of the secured creditor's interest in the Debtor's interest in equipment under UCC-1 filings. This claim is evidenced by UCC-1 filings. <u>Debtor estimates the claim in this class in the amount of unknown.</u>

        B.   <u>Impairment</u>: Class Eleven is impaired.

        C.   <u>Treatment</u>: Debtor believes that the claim of National City has been satisfied and no monies are owed to National City. If National City is found to have a claim it shall be treated and paid according to the contract entered into by the parties.

    3.12   <u>Class 12 - Unsecured Deficiency Claims and Unsecured Claims.</u>

        A.   <u>Classification</u>: Class Twelve consists of all unsecured deficiency claims and unsecured claims against the debtor. <u>Debtor estimates claims in this class may exceed $105,000.00.</u>

        B.   <u>Impairment</u>: Class Twelve is impaired.

        C.   <u>Treatment</u>: The Class Twelve claims shall be paid an amount equal to fifty percent (50 %) of the allowed amount of their claims at three percent (3 %) interest on the unpaid balance in one hundred and twenty (120) equal monthly installments with the first payment due 60 days from the Effective Date. Any liens held by the Class Twelve creditors shall be null and void and removed as of the Effective Date.

    3.13   <u>Class 13 - Contingent, Unliquidated and Disputed Claims.</u>

        A.   <u>Classification</u>: Class Thirteen consists of all contingent, unliquidated and disputed claims.

        B.   <u>Impairment</u>: Class Thirteen is impaired.

        C.   <u>Treatment</u>: Class Thirteen creditors shall receive no distribution under the Plan.

    3.14   <u>Class 14 - Claims of Participating Investors.</u>

        A.   <u>Classification</u>: Class Fourteen consists of the claims of participating investors.

        B.   <u>Impairment</u>: Class Fourteen is impaired.

14

Case 4:12-bk-08122-EWH   Doc 116   Filed 09/12/13   Entered 09/12/13 16:25:25   Desc
Main Document   Page 14 of 20
Case 4:12-bk-08122-SHG   Doc 152   Filed 01/24/14   Entered 01/27/14 08:57:57   Desc
Main Document   Page 23 of 29

C.    Treatment: Unless participating investors contribute substantial capital required to fund this Plan and/or make capital improvements to the subject property they will receive no percentage of the equity interest of the debtor and no distribution under the Plan.

3.15   Class 15 - Interest of Equity Holders.

     A.    Classification: Class Fifteen consists of the interest of the debtor.

     B.    Impairment: Class Fifteen is not impaired.

     C.    Treatment: The debtor shall be allowed to retain its current percentage of interest or a percentage thereof unless participating investors are required to contribute substantial capital required to fund this Plan and/or make capital improvements to the subject property.

## ARTICLE IV

### General Provisions

4.1.   Notwithstanding any other provision of this Plan, each claim shall be paid only after it has been allowed in accordance with the Code.

4.2   At the option of the Debtor, this Plan may be withdrawn at any time prior to the Effective Date of the Plan. Such option shall be exercised by the filing in the case of a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case. If such option is timely and properly exercised, the case shall continue and be administered as if the Plan has been withdrawn prior to the confirmation.

4.3   Pursuant to Section 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever, which the Debtor had or had power to assert immediately prior to confirmation of the Plan, including without limitation, actions for the avoidance and recovery pursuant to Section 550 of the Code or transfers avoidable by reason of Sections 544, 545, 548, 549 or 553(b) of the Code, and may commence or continue in any appropriate court or tribunal and suit or other proceeding for the enforcement of same.

## ARTICLE V

### Means for Execution of the Plan

15

Case 4:12-bk-08122-EWH   Doc 116   Filed 09/12/13   Entered 09/12/13 16:25:25   Desc
Main Document    Page 15 of 20
Case 4:12-bk-08122-SHG   Doc 152   Filed 01/24/14   Entered 01/27/14 08:57:57   Desc
Main Document    Page 24 of 29

5.1 <u>Continuation of the Debtor's Business</u>: The Debtor, as reorganized, will retain all property of the estate, excepting property which is to be sold or otherwise disposed of as provided for herein (if applicable), executory contracts which are rejected pursuant to this Plan, and property transferred to creditors of the Debtor pursuant to the express terms hereof. The retained property shall be used and employed by the Debtor in the continuance of its business. (Further details concerning the nature and scope of the Debtor's future business operations may be found in the Disclosure Statement which accompanies the Plan.)

5.2 <u>Raising Additional Capital</u>: The Plan may be implemented by current owners and/or new Participating Investors making capital contributions in the Reorganized Debtor if required.

## ARTICLE VI

*Provisions for the Assumption or Rejection of*
*Executory Contracts and Unexpired Leases*

The Debtor assumes all executory contracts or unexpired leases to which they are a party, except any specifically provided for prior to the hearing on the Disclosure Statement.

## ARTICLE VII

*Retention of Jurisdiction*

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or interests or obligations thereto and for any other purpose which is contemplated in the Plan or which will otherwise assist in the consummation of the Plan. The Court also will retain jurisdiction for purposes of determining the allowance of any payment of any other claims or administrative expenses. The Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan. In addition, the Court shall retain jurisdiction for the following purposes:

a) the classification of any claim or interest, the determination of such objections as may be filed to claims, or interest, and the re-examination of the allowance of any claim or interest;

16

1                   b)       the correction of any defect, the curing of any omission, or the reconciliation of

2   any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes

3   and intent of this Plan;

4                   c)       to enforce and interpret the terms and conditions of this Plan;

5                   d)       entry of any order, including injunctions, necessary to enforce the title, rights and

6   powers of the Debtor and to impose such limitations and terms of such title, rights and powers as the

7   Court may deem necessary;

8                   e)       determination of any claims asserted by the Debtor against any other person or

9   entity, including but not limited to any right of the Debtor to recover assets pursuant to the provisions

10  of Title 11, if such claim is pursued in the Court prior to the closing of the case;

11                  f)       determination of all questions and disputes concerning the sale, lease,

12  encumbrancing or other transfer of the property of the Debtor; and

13                  g)       entry of a final decree closing this case.

14  Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by

15  estoppel, the principal of res judicata or collateral estoppel with respect to any term or provisions

16  contained herein in the event the plan is not confirmed as set forth herein.

17

18  ***ARTICLE VIII***

19  *Modification of the Plan*

20  This Plan may be modified in accordance with the provisions of the Bankruptcy Code and

21  Chapter 11. In this regard:

22                  a)       in accordance with Section 1127(a) of the Bankruptcy Code and Chapter 11, 11

23  U.S.C. Section 1127(a), modification(s) of the Plan may be proposed in writing by the Debtor at any

24  time before its confirmation, provided that the Plan, as thus modified meets the requirements of Sections

25  1122 and 1123 of the Bankruptcy Code and Chapter 11, 11 U.S.C. Section 1122 and 1123; and provided

26  further that the circumstances then existing justify such modification(s), and the Bankruptcy Court

27  confirms the Plan as thus modified, under Section 1129 of the Bankruptcy Code and Chapter 11, 11

28  17

Case 4:12-bk-08122-EWH    Doc 116    Filed 09/12/13    Entered 09/12/13 16:25:25    Desc
Main Document    Page 17 of 20
Case 4:12-bk-08122-SHG    Doc 152    Filed 01/24/14    Entered 01/27/14 08:57:57    Desc
Main Document    Page 26 of 29

U.S.C. Section 1129;

b)      any holder(s) of a claim or equity interest(s) that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Bankruptcy Court for doing so, such holder(s) changes its previous acceptance or rejection; and

c)      every modification of the Plan will supersede the previous version(s) of the Plan as and whenever each such modification is effective provided in this Article.  When superseded, the previous version(s) of the Plans will be in the nature of a withdrawn or rejected settlement proposal(s), and will be null, void and unusable by the Debtor or any other party for any purpose(s) whatsoever with respect to any of the contents of such version(s) of the Plan.

### ARTICLE IX

*Miscellaneous Provisions*

9.1    <u>Securities Law</u>: Any satisfaction or exchange provided to any creditor pursuant to this Plan which may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to Section 1145 of the Code.  Absent registration or another exemption from the requirements of registration pursuant to the Securities Act of 1933, as amended, and any applicable state securities laws, the subsequent transfer of any such securities is not so exempt.

9.2    <u>Title to Property</u>: Upon confirmation, all assets of the Debtor will be reinvested in the Debtor.

9.3    <u>Curing of Defaults</u>: The confirmation of a plan shall result in the curing of any default to the holder of a claim or interest according to the terms and conditions of the Plan.

### ARTICLE X

*Closing of the Case*

18

1   At such time as the case has been fully administered, that is, when all things requiring action by
2   the Court have been done, and the Plan has been substantially consummated, this case shall be closed.
3   To close the case the Debtor shall file an application for final decree showing that the case has been fully
4   administered and that he Plan has been substantially consummated. The Court shall conduct a hearing
5   upon the application after notice to all creditors, equity security holders and persons specially requesting
6   notice, after which an order approving the Debtor's report and closing the case (final decree) may be
7   entered.

8   In the period after confirmation but before closing of the case, the Debtor may continue to avail
9   itself of the services of professional persons whose employment was approved at or prior to confirmation
10  in completing administration of the case and in the consummation and performance of the Plan, and, if
11  necessary, with approval of the Court employ additional professional persons to render services in and
12  in connection with this case. With respect to services rendered and expenses incurred in or in connection
13  with the case by any professional person during such period, the professional person may render periodic
14  billings therefore to the Debtor which shall promptly pay the same, but each such payment shall be
15  subject to review and approval by the Court as to reasonableness thereof, as set forth herein below.

16  In its application for final decree, the Debtor shall detail all amounts paid during such period to
17  professional persons as compensation for services rendered or reimbursement of expenses incurred, and
18  with respect to which no prior allowance thereof has been made by the Court. At the hearing on the
19  Debtor's application for final decree the Court shall consider and determine whether or not such
20  payments shall be approved as reasonable.

21  Confirmation of this Plan shall constitute a discharge of any debt that arose prior to confirmation
22  and any debt of any kind specified in Bankruptcy Code Section 502(g), (h) and (i), other than those
23  liabilities expressly to be assumed hereby by the Reorganized Debtor.

24  ///
25  ///
26  ///
27
28                                  19

***CONCLUSION***

The materials provided in the Disclosure Statement and Plan are intended to assist you in voting on the Plan in an informed fashion. If the Plan is confirmed, you will be bound by its terms; therefore, you are urged to review this material and to make such informed vote on the Plan.


DATED:        September 12, 2013

                                    LAW OFFICES OF
                                    ERIC SLOCUM SPARKS, P.C.


                                    /s/ Sparks AZBAR #11726
                                    Eric Slocum Sparks
                                    Attorney for Debtor


Copies of the foregoing
mailed September 12, 2013 to:

United States Trustee
230 N. First Ave. #204
Phoenix, AZ 85003

Isaac M. Gabriel, Esq.
Quarles & Brady, LLP
Renaissance One
Two N. Central Ave.
Phoenix, AZ 85004
Attorney for Rewards Network

Grant Winston, Esq.
Deputy County Attorney
Pima County Attorney's Office
32 N. Stone, #2100
Tucson, AZ 85701
Attorney for Pima County

Gregory E. Good, Esq.
Good Law, P.C.
3430 E. Sunrise Dr. #170
Tucson, AZ 85718
Attorney for Login, Inc.


/s/ A. Court-Sanchez

20